IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LEONARD G. MILLER,<br><br>          Plaintiff,<br><br><br>          vs.<br><br><br>CITY OF TOOELE, et al.<br>          Defendants. | AMENDED ORDER & MEMORANDUM<br>DECISION<br><br><br><br>Case No. 2:03-CV-397 TC |

Plaintiff Leonard G. Miller filed this action under 42 U.S.C. § 1983 against Defendants City of Tooele, Tooele City Police Department, Sargent Roger C. Niesporek, Detective Todd M. Hewitt, and Lieutenant Craig Wexels.  Mr. Miller, who was arrested, charged, and ultimately convicted in state court of conspiracy to distribute a controlled substance, claims that he suffered multiple violations of his constitutional rights during the course of the criminal investigation and the subsequent prosecution.  Additionally, Mr. Miller alleges that Sargent Niesporek and Detective Hewitt engaged in a conspiracy to deprive him of his civil rights under 42 U.S.C. § 1985(2).   Mr. Miller also asserts a state law claim against Sargent Niesporek and Detective Hewitt for intentional infliction of emotional distress.

In an order dated July 27, 2005, the court addressed the majority of Mr. Miller's claims. Intervening authority from the United States Supreme Court, as well as the submission of additional motions related to Mr. Miller's underlying claims, cause the court to now issue this Amended Order & Memorandum Decision.  For the reasons set forth more fully below, the court

grants Defendants summary judgment on all claims raised by Mr. Miller with one exception.

Defendants are not entitled to summary judgment on Mr. Miller's claim that his Fourth

Amendment rights were violated when law enforcement searched his home after completing a

protective sweep, but before the arrival of a search warrant.

## ANALYSIS[1]

### Legal Standards

#### Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998).  The court must "examine the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment."  Applied

Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

#### Qualified Immunity

The qualified immunity doctrine "protects public officials performing discretionary

functions unless their conduct violates 'clearly established statutory or constitutional rights of

which a reasonable person would have known.'"  Johnson v. Martin, 195 F.3d 1208, 1216 (10th

Cir. 1999) (internal citations omitted).  When a claim of qualified immunity is raised in the

context of a motion for summary judgment, the court, viewing the evidence in a light most

---

[1]The factual background of this case is set forth at length in the written submissions of the
parties.  The court will repeat only those facts necessary to explain its decision.

2

favorable to the nonmoving party, must first determine whether the plaintiff has sufficiently asserted the violation of a constitutional right.  Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005).  Then, if the plaintiff has done so, the court must determine whether the asserted right was clearly established at the time the defendant acted.  Id. at 841-42.

 "When evaluating a qualified immunity defense, after identifying the constitutional right allegedly violated, courts must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place."  Pierce v. Gilchrist, 359 F.3d 1279, 1297 (10th Cir. 2004) (emphasis added).  "Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional."  Mimics, 394 F.3d at 842 (quoting Hope v. Pelzer, 536 U.S. 730, 739-40 (2002)).  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003).  To determine whether a constitutional right is clearly established, the Supreme Court recently noted, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law, the unlawfulness must be apparent."  Hope, 536 U.S. at 739 (emphasis added).  Put another way, the inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional."  Pierce, 359 F.3d at 1298 (emphasis added).

 Importantly, the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 343 (1986) (citing Harlow v. Fitzgerald, 475 U.S. 800 (1982)).  A

3

showing of negligence, even if it is gross negligence, is not sufficient to establish liability under 42 U.S.C. § 1983.  Johnson, 195 F.3d at 1219.

Even on summary judgment, Mr. Miller bears the burden of establishing that the Defendants violated a constitutional right.  See Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992) ("A defendant government official need only raise the qualified immunity defense to shift the summary judgment burden to the plaintiff.").

**Fourth Amendment: Search and Seizure**

Mr. Miller asserts that Detective Hewitt and Sargent Niesporek violated his Fourth Amendment rights based on two distinct actions: (1) the officers' initial entry into his residence after Mr. Miller discovered the presence of a police informant, and (2) the officers' re-entry into and occupation of Mr. Miller's residence while the officers awaited the arrival of a search warrant.  Mr. Miller also alleges that officers impermissibly conducted a search of his premises--following a protective sweep--while waiting for the arrival of the search warrant.

          1.  Initial Entry Into Mr. Miller's Home

Sargent Niesporek and Detective Hewitt used Kevin Reeder as an informant to arrange a purchase of illegal narcotics from Mr. Miller.  After arranging the sale by telephone, the officers drove Mr. Reeder to Mr. Miller's residence and sent him in with $30.00 of police money to complete the transaction.  Mr. Reeder wore a wire allowing the officers to monitor and record the transaction as it occurred.  Detective Hewitt and Sargent Niesporek remained in their car near Mr. Miller's residence to monitor the transaction.

While listening to the conversation between Mr. Miller and Mr. Reeder, the officers heard a woman's voice.  The woman was later identified as Misty Woods.  After hearing Ms. Woods's voice, the officers saw a woman walk past their car.  They then heard Ms. Woods tell Mr. Miller

4

that Sargent Niesporek was sitting in a car nearby.  The officers left the area and parked in a new location slightly farther from Mr. Miller's residence.

From their new location the officers heard Mr. Miller accuse Mr. Reeder of being an informant.  Mr. Miller instructed Mr. Reeder to open his jacket so that Mr. Miller could see if Mr. Reeder was wearing a wire.  Mr. Reeder refused.  The officers heard Mr. Miller, who discovered the wire despite Mr. Reeder's refusal to cooperate, order Mr. Reeder out of his residence.  Mr. Reeder refused to leave.  The officers then drove back to Mr. Miller's residence.

When they arrived, Detective Hewitt and Sargent Niesporek arrested Mr. Miller, who was on the porch at the time.  The officers entered Mr. Miller's home without a warrant or consent and conducted a protective sweep.  They located Mr. Reeder and Ms. Woods and placed them in handcuffs.  Mr. Miller was later brought inside the residence and the three individuals were detained in the front room.

Mr. Miller argues that his Fourth Amendment rights were violated by the officers' entry into his home.  Citing Kirk v. Louisiana, 536 U.S. 635, 638 (2002), Detective Hewitt and Sargent Niesporek have responded that their warrantless entry into Mr. Miller's home was justified by exigent circumstances.  According to Detective Hewitt and Sargent Niesporek,  Mr. Miller's discovery that Mr. Reeder was working with the police caused them to fear for Mr. Reeder's safety and justified their entry into Mr. Miller's home.  The officers maintain that they entered Mr. Miller's home to perform a protective sweep because they knew Mr. Reeder was inside and because they suspected Ms. Woods was also present.

The court agrees that the officers' need to assure the safety of Mr. Reeder and to protect themselves from occupants (known and unknown)of Mr. Miller's residence constituted exigent circumstances that justified their entrance into Mr. Miller's residence.  Mr. Miller correctly

points out that the police may not create exigent circumstances to allow the warrantless entry into a person's home. See United States v. Flowers, 336 F.3d 1222, 1230 (10th Cir. 2003). But there is no evidence to demonstrate that the exigency present in this case was, in fact, created by Detective Hewitt and Sargent Niesporek. Mr. Miller asserts that the officers directed Mr. Reeder to refuse to leave the residence in order to create an exigency and justify the entrance into Mr. Miller's residence. But there is simply no evidence in the record to support this theory. Accordingly, Sargent Niesporek and Detective Hewitt are entitled to qualified immunity on the issue of the initial entry into Mr. Miller's residence.

### 2.  Re-entry Into Mr. Miller's Home After Arrest

Mr. Miller, Mr. Reeder, and Ms. Woods were detained while the officers waited for a warrant to search Mr. Miller's home. After arresting Mr. Miller, the officers took him back inside his home, where he joined Mr. Reeder and Ms. Woods, but Mr. Miller "did not give the officers permission or consent at any time for them to enter my home." (Affidavit of Leonard G. Miller ("Miller Aff.") ¶ 4, attached as Ex. 1 to Plf.'s Memo. Opp'n. Mot. Summ. J. (dkt. #32).)

In his deposition, Detective Hewitt explained that Mr. Miller and Ms. Woods were detained inside the residence to "maintain the integrity of that house so that we could say nobody else had entered or exited the house." (Deposition of Todd Hewitt, Nov. 7, 2005, 55:25-56:3, attached as Ex. 7 to Plf.'s Resp. in Opp'n to Mot. for Summ. J. (dkt. #96).) When asked if the officers considered detaining Mr. Miller and Ms. Woods outside the residence until a search warrant arrived, Detective Hewitt responded: "Originally that had been discussed, I believe, but it was raining. It was pouring. We didn't want to stick them outside of the house. They were more comfortable in their home. It was heated, [had] places for them to sit, things of that nature." (Id. at 56:9-13.)

6

Mr. Miller, in his affidavit, states that while being detained in his home: "I watched Defendants search my home and touch my personal property without my consent and before any search warrant was issued or presented to me." (Miller Aff. ¶ 6.)  Mr. Miller further states: "Det. Hewitt left my home with Kevin Reeder.  Sgt. Niesporek produced a plate and a straw making some reference to meth.  I told him it was sodium or salt from which I had been eating french fries.  Sgt. Niesporek was handling the plate and straw long before he had a warrant." (Id. at ¶ 13.)  During his deposition, Mr. Miller elaborated:

> [I saw Sargent] Niesporek bringing items out of my bedroom such as a plate and straw, moving ceramic figurines, looking under them, kind of looking at them, looking behind things, lifting up the skirting on my couch, looking under my couch, moving cushions around on my couch, kind of picking them up and looking under the cushions.

(Deposition of Leonard Miller, Sept. 29, 2005, 45:8-14, attached as Ex. 2 to Defs.' Memo. in Supp. of Mot. to Dismiss, or for Summ. J. (dkt. #83).)

Mr. Miller argues that the officers' re-entry into his home after he had been arrested and the search conducted by officers after the protective sweep but before the arrival of the search warrant violated his Fourth Amendment rights.  Defendants respond that even if the re-entry and alleged search were improper under the Fourth Amendment, the voluntary suppression during the criminal proceedings of evidence obtained during the detention and search suffices to purge all impropriety.  The court disagrees.  While suppression of the evidence could bear on the question of damages, it does not affect the analysis of whether the officers violated Mr. Miller's Fourth Amendment rights.

Turning first to the question of the re-entry into Mr. Miller's residence.  Ample case law supports the proposition that officers can remain inside a residence while waiting for a search warrant.  See Segura v. United States, 468 U.S. 796, 798 (1984) (no Fourth Amendment

violation when officers entered premises with probable cause and the "preserve[d] the status quo [for nineteen hours] while others, in good faith, [were] in the process of obtaining a warrant."); United States v. Martinez, No. 05-00087-CR-3-RV-001, 2006 WL 2034648, at *3 (11th Cir. July 21, 2006) ("The officers entered the residence, made sure that no one was hiding who could have destroyed any evidence, and watched the residents until a search warrant arrived. Seizure of a residence to prevent the destruction of evidence while waiting for a warrant does not constitute an illegal search under the Fourth Amendment."); United States v. Amburn, 412 F.3d 909, 913 (8th Cir. 2005) (no constitutional violation claimed when officers, "[d]ue to cold weather, . . . decided to wait inside the house" for a warrant to arrive); United States v. Fortgang, 77 Fed. Appx. 37, 38 (2nd Cir. 2003) ("Fortgang also challenges the suppression ruling, arguing that when law enforcement officials entered his house . . . they violated the Fourth Amendment by waiting inside with the occupants of the house, until a search warrant was obtained several hours later.  We disagree."); United States v. Ruiz-Estrada, 312 F.3d 398, 404 (8th Cir. 2002) ("The district court's finding that the officers acted reasonably in securing the apartment while awaiting a search warrant was not clearly erroneous. . . . Officers secured the apartment to prevent the destruction of a suspected narcotics supply.  The act of securing the apartment while awaiting a search warrant comports with the Fourth Amendment." (citing United States v. Roby, 122 F.3d 1120, 1125 (8th Cir. 1997) (no Fourth Amendment violation when officers secured a hotel room until obtaining a search warrant)); United States v. Taylor, 248 F.3d 506, 513 (6th Cir. 2001) ("Once an officer has probable cause to believe contraband is present, he must obtain a search warrant before he can proceed to search the premises.  However, the Supreme Court has held that because evidence may be removed or destroyed before a warrant can be obtained, an officer does not violate the Fourth Amendment by securing the area to be searched and waiting

until a warrant is obtained." (citing <u>Sequra v. United States</u>, 468 U.S. 796, 810 (1984)) (internal citation omitted)).  Here, the officers suspected Mr. Miller of distributing controlled substances. It was constitutionally permissible for the officers to remain on the premises and maintain the status quo while waiting for a search warrant to issue.

There is, however, a critical difference between securing and searching.  As noted in <u>Taylor</u>, absent exigent circumstances, a search warrant is required before officers are allowed to search secured premises.  248 F.3d at 513.  In this case, Defendants do not deny Mr. Miller's accusations that officers continued to search Mr. Miller's residence after the initial protective sweep and before the arrival of the search warrant.  Defendants argue that no true damage was caused by this "second search" because all the harms Mr. Miller claims he has suffered in this case flowed from his initial arrest alone.  While Defendants' arguments may be relevant to a determination of the damages Mr. Miller should receive in light of the impermissible second search, they do not change the reality that the violation of constitutional rights is itself a compensable harm.  It may be that Mr. Miller is ultimately only able to recover nominal damages for the constitutional violation occasioned by the second search, but Defendants are not entitled to summary judgment on that claim.

**Fourth Amendment: Malicious Prosecution**

Mr. Miller has asserted a claim for malicious prosecution based on the criminal prosecution and conviction resulting from his April 26, 2002 arrest.  The State of Utah initiated the prosecution of Mr. Miller with the filing of an Information on April 30, 2002.  The Information initially contained three counts: (1) possession of a controlled substance, (2) conspiracy to distribute a controlled substance, and (3) possession of drug paraphernalia.  The two possession charges were dropped, but Mr. Miller was eventually convicted by a jury on the

remaining conspiracy charge.

The Tenth Circuit recognizes a cause of action under § 1983 for malicious prosecution, but the court has made clear that such a claim is not the same as a claim for the state law tort of malicious prosecution.  In Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004), the court noted that in a § 1983 claim the "'ultimate question' is the existence of a constitutional violation." Id. at 1290 (citations omitted).  Importantly, the court found that a plaintiff need not satisfy "the requirements of an analogous common law tort" to state an actionable claim for malicious prosecution under § 1983. Id.

Despite Mr. Miller's allegations of improper conduct by the officers in this case, the trial court found on several occasions that the prosecution of Mr. Miller was adequately supported by probable cause.  Evidence obtained as the result of a possible constitutional violation was suppressed by stipulation and not used at trial.  The fact that Mr. Miller was convicted by a jury on the charge of conspiracy to distribute a controlled substance lends further credence to the conclusion that there was not a constitutional violation to support a claim of malicious prosecution under § 1983.  Defendants are entitled to summary judgment on that claim.

**First Amendment: Retaliatory Prosecution**

Mr. Miller also asserts a claim of retaliatory prosecution based on a settlement reached with Detective Hewitt and Sargent Niesporek in an earlier civil rights lawsuit.

On April 27, 1998, Detective Hewitt and Sargent Niesporek entered Mr. Miller's home, took him outside and arrested him for public intoxication and disorderly conduct.  The charges were eventually dismissed because of the warrantless entry into Mr. Miller's home.  Mr. Miller, along with his sister and mother, filed a lawsuit against Sargent Niesporek and Detective Hewitt under 42 U.S.C. § 1983 based upon the officers' entry into Mr. Miller's home and the subsequent

prosecution.  In October of 2000, the parties settled and the case was dismissed.  Mr. Miller

asserts that his April 26, 2002 arrest was orchestrated by the Defendants to initiate a retaliatory

criminal prosecution in violation of the First Amendment.

Mr. Miller argues that Detective Hewitt and Sargent Niesporek recruited Mr. Reeder as

an informant with the specific purpose of investigating and prosecuting Mr. Miller.  Mr. Reeder

testified at his deposition that the officers were the ones who suggested setting up a controlled

drug buy with Mr. Miller: "I can't say whether it was Niesporek or whether it was that parole

officer.  I don't remember which one it was that first come up with [Mr. Miller's] name."

(Deposition of Kevin Reeder, Mar. 17, 2003, 19:13-16, attached as Ex. 2 to Plf.'s Memo. Opp'n.

Mot. Summ. J.)  Mr. Reeder also testified that it was the officers who dialed Mr. Miller's

telephone number.  (Id. at 18:22.).

The Tenth Circuit has long recognized claims for retaliatory or vindictive prosecution,

noting: "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless

actionable because retaliatory actions may tend to chill individuals' exercise of constitutional

rights."  Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001) (quoting Dawes v.

Walker, 239 F.3d 489, 491 (2d Cir. 2001)); see also Wolford v. Lasater, 78 F.3d 484, 488 (10th

Cir. 1996); Gehl Group v. Koby, 63 F.3d 1528, 1538 (10th Cir. 1995).  "In the context of a

government prosecution, a decision to prosecute which is motivated by desire to discourage

protected speech or expression violates First Amendment and is actionable under § 1983."

Wolford, 78 F.3d at 488.

On Defendants' motion, the court stayed this case pending the United States Supreme

Court's decision in Hartman v. Moore, 126 S. Ct. 1695 (2006).  That decision has now issued

and Defendants have filed a motion for summary judgment on Mr. Miller's retaliatory

11

prosecution claim on the basis of the Harman decision.  Hartman imposes a duty on a plaintiff in

a retaliatory prosecution case to plead and prove that the challenged prosecution was not

supported by probable cause.  See id. at 1707 ("Because showing an absence of probable cause

will have high probative force, and can be made mandatory with little or no added cost, it makes

sense to require such a showing as an element of a plaintiff's case, and we hold that it must be

pleaded and proven.").[2]

The parties agree that Hartman imposes a requirement on Mr. Miller to establish that his

state prosecution was not supported by probable cause and the court agrees with the parties'

assessment.  The application of Hartman to this case should be a straightforward matter

considering that Mr. Miller was bound over for trial and ultimately convicted of the charged

offense.  But Mr. Miller contends that, despite the initiation and outcome of his criminal trial, he

should be allowed, in this civil proceeding, to establish that his state prosecution was not

supported by probable cause.

Mr. Miller justifies his attack on the state court's probable cause determination by

arguing that exculpatory evidence was destroyed by Defendants and that the presence and

consideration of the destroyed evidence would have undercut the existence of probable cause in

the state court criminal proceeding.  Specifically, Mr. Miller claims that Defendants destroyed a

tape recording that would have established that Mr. Miller refused to sell drugs to Mr. Reeder

---

[2]Defendants, through their motion, sought alternative relief of either dismissal of or
summary judgment on Mr. Miller's retaliatory prosecution claim.   Defendants' presumably
premise their request for dismissal on the theory that Mr. Miller was required to plead that his
underlying state prosecution was not supported by probable cause.  But a review of the
Complaint reveals that Mr. Miller adequately asserted a lack of probable cause.  (See Plf.'s
Response in Opp'n to Def.'s Mot. to Dismiss/for Summ. J. iii-iv (listing examples of lack of
probable cause allegations).)  Accordingly, the court addresses Defendants' motion as one
seeking summary judgment.

despite Mr. Reeder's repeated requests that he do so.

Any argument that Defendants destroyed exculpatory evidence, or that probable cause did not support the state proceedings against Mr. Miller,  goes to the heart of the validity of Mr. Miller's state conviction.  If Mr. Miller successfully established the probable cause was lacking in the state proceedings, that showing that would undoubtedly call into question the validity of the jury's determination that Mr. Miller was guilty beyond a reasonable doubt.  As stated in Heck v. Humphrey, 512 U.S. 477, 486 (1994), "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . . ."  While Mr. Miller may argue that his state prosecution was not supported by probable cause, he must make that argument before the state court.  Accordingly, Defendants are granted summary judgment on Mr. Miller's retaliatory prosecution claim.

**Fourteenth Amendment: Alleged Destruction of Evidence**

Mr. Miller alleges that Detective Hewitt and Sargent Niesporek violated his due process rights under the Fourteenth Amendment through the spoliation of evidence.

As discussed above, Mr. Reeder was wearing a wire and radio transmitter in Mr. Miller's home.  The device used was on loan from the Grantsville City Police Department.  During the course of Mr. Miller's criminal prosecution, his counsel sought to review the tape recording of the conversation that occurred within Mr. Miller's residence and was told that the tape was blank.  During Mr. Miller's criminal proceedings, the trial judge concluded that the evidence had not been destroyed, but allowed Mr. Miller's counsel to conduct depositions of all witnesses regarding the content of the conversation that the officers had attempted to record.

Mr. Miller asserts that Detective Hewitt and Sargent Niesporek intentionally destroyed

the tape recording, which he contends contained exculpatory evidence.  According to Mr. Miller,

that spoliation of evidence violates his rights under the Due Process Clause of the Fourteenth

Amendment.  Several courts, including the Tenth Circuit, "have recognized that police officers

can be liable under the Due Process Clause, pursuant to § 1983, for withholding exculpatory

evidence."  Pierce v. Gilchrist, 359 F.3d 1279, 1293 (10th Cir. 2004); see also Newsome v.

McCabe, 256 F.3d 747 (7th Cir. 2001); Jean v. Collins, 221 F.3d 656 (4th Cir. 2000) (en banc);

Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999).

The state court considered the argument now advanced by Mr. Miller and concluded that

no constitutional violation occurred.  But Mr. Miller claims that there is new evidence before this

court that the state court did not have the benefit of reviewing and that his cause of action should

be allowed to proceed.  The "new evidence" that Mr. Miller points to is his own deposition

testimony.  Mr. Miller claims that he was "practically" foreclosed and "essentially compelled" to

sit silently during the criminal trial and could not testify about what happened the night of his

arrest.  Mr. Miller was not compelled to remain silent during his criminal trial; he chose to

remain silent.  His reliance on the allegedly destroyed evidence in this action is nothing more

than an impermissible collateral attack on his state court conviction.  If there is, in fact, "new

evidence" supporting Mr. Miller's claim that the tapes were illegally erased, the proper course

would be for Mr. Miller to supply the state court with that evidence.  See Heck, 512 U.S. at 486

("[T]he hoary principle that civil tort actions are not appropriate vehicles for challenging the

validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily

require the plaintiff to prove the unlawfulness of his conviction or confinement . . . .").

**Conspiracy Under 42 U.S.C. § 1985**

Mr. Miller claims that Sargent Niesporek and Detective Hewitt conspired to violate his

14

civil rights in violation of 42 U.S.C. § 1985(2). There is nothing in the record that supports a claim under that statute. Mr. Miller alleges, without well-founded support, that Sargent Niesporek and Detective Hewitt conspired to destroy exculpatory evidence in violation of his due process rights under the Fourteenth Amendment and thereby interfered with the court proceedings in his criminal prosecution. As discussed, the state court concluded that no constitutional violation occurred in connection with the alleged destruction of evidence. Any attempt to subvert that ruling in this proceeding would amount to an impermissible collateral attack. Defendants are granted summary judgment on Mr. Miller's conspiracy claim.

**Intentional Infliction of Emotional Distress**

In order to succeed on a state law claim of intentional infliction of emotional distress, Mr. Miller must demonstrate:

> (i) the [defendant's] conduct [complained of] was outrageous and intolerable in that it offended ... generally accepted standards of decency and morality; (ii) [the defendant] intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) [the plaintiff] suffered severe emotional distress; and (iv) [the defendant's] conduct proximately caused [the] emotional distress.

Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 535-36 (Utah 1992) (quoting Retherford v. AT&T Comm. of the Mountain States, Inc., 844 P.2d 949, 970-71 (Utah 1992)) (alterations in original). The conduct of which a plaintiff complains must evoke "outrage or revulsion; it must be more than unreasonable, unkind or unfair." Prince, 56 P.3d at 536 (quotations omitted). Conduct is not outrageous only because it is "tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." Id.

Here, Mr. Miller has alleged an actionable violation of his constitutional rights based upon the officers' impermissible "second search" of his home. The court recognizes that all constitutional violations are of grave importance, but, as a matter of law, finds that Mr. Miller

15

has not alleged facts sufficient to maintain a claim for intentional infliction of emotional distress.

**City of Tooele, Tooele City Police Department, and Lieutenant Wexels**

Mr. Miller has not submitted any evidence in support of his claims against the City of Tooele, the Tooele City Police Department, or Lieutenant Wexels.  In their written submissions to the court, Defendants argue that no constitutional violation occurred and that, therefore, there is no basis for establishing municipal or supervisory liability in this case.  But, as discussed, Defendants have not successfully argued that the "second search" of Mr. Miller's residence was constitutionally permissible.  Nevertheless, Mr. Miller has submitted no evidence that supports his claims against the municipal defendants or Lieutenant Wexels.  In fact, Mr. Miller's brief opposing Defendants' request for summary judgment does not even mention those defendants.  "[S]ummary judgment is appropriate unless the nonmoving party makes a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Champagne Metals v. Ken-Mac Metals, Inc., Nos. 04-6222, 05-6139, 2006 WL 2244644, * 6 (10th Cir. Aug. 7, 2006) (internal quotation and brackets omitted).  No such showing has been made here and, therefore, the City of Tooele, the Tooele City Police Department, and Lieutenant Wexels are entitled to summary judgment on all claims against them.

**Pending Motions**

Given the court's rulings in this order, all pending motions in limine are denied without prejudice.  Additionally, all other pending motions are denied as moot.  Counsel are free to re-file any motions that they feel still warrant the attention of the court in spite of the issuance of this Amended Order and Memorandum Decision.

16

**ORDER**

For the reasons set forth above:

1.      Motion for Summary Judgment of Defendants' Sargent Roger Niesporek and

Detective Todd Hewitt (dkt. #25) is DENIED insofar as that motion seeks

summary judgment on Mr. Miller's claim that officers illegally searched his

residence after the protective sweep but before the arrival of a search warrant.

The motion is GRANTED on all other issues.

2.      Plaintiff's Motions in Limine Nos. 1, 2 & 3 (dkt. #44) are DENIED without

prejudice.

3.      Joint Stipulation Regarding Extension of Fact Discovery Deadlines to Depose

Roger Niesporek and Craig Wexels (dkt. #52) is DENIED as moot.

4.      Plaintiff's Motion in Limine No. 4 (dkt. #54) is DENIED without prejudice.

5.      Plaintiff's Motions in Limine Nos. 5, 6 and 7 (dkt. #66) are DENIED without

prejudice.

6.      Defendants' Motion in Limine to Exclude Evidence Related to the Cassette Tape

and Surveillance Equipment (dkt. #73) is DENIED without prejudice.

7.      Defendants' Motion to Dismiss All Remaining Claims, or in the Alternative,

Motion for Summary Judgment (dkt. #88) is DENIED insofar as that motion

seeks summary judgment on Mr. Miller's claim that officers illegally searched his

residence after the protective sweep but before the arrival of a search warrant.

The motion is GRANTED on all other issues.

8.      Motion to Strike Plaintiff's Recently Named Witnesses or in the Alternative to

Continue Trial Date (dkt. #90) is DENIED as moot.

9.     Plaintiff's Motion to Revise Prior Order Dismissing Second Cause of Action for

Constitutional Injury Due to Destruction of Exculpatory Evidence and Reinstating

Claim Due to Discovery of New Evidence (dkt. #93) is DENIED.

10.    Plaintiff's Motion for Summary Judgment on Issue of Illegal Re-Entry (dkt. #94)

is DENIED.


        SO ORDERED this 14th day of August, 2006.

                BY THE COURT:

                TENA CAMPBELL
                United States District Judge

18